**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

RAJKO DUGANDZIC,

        Plaintiff,

v.                                                Case No: 6:17-cv-848-Orl-40KRS

NIKE, INC.,

        Defendant.
_____/

## **ORDER**

This cause is before the Court without oral argument on the following:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 23), filed July 2, 2018;

2. Defendant's Motion for Summary Judgement (Doc. 25), filed July 2, 2018;

3. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 28), filed July 16, 2018;

4. Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 29), filed July 16, 2018;

5. Plaintiff's Reply in Support of Motion for Partial Summary Judgment (Doc. 31), filed July 30, 2018; and

6. Defendant's Reply in Support of Motion for Summary Judgment (Doc. 32), filed July 30, 2018.

Upon consideration and review of the record as cited by the parties in their respective briefs, Defendant's motion (Doc. 25) is due to be granted, and Plaintiff's motion (Doc. 23) is due to be denied.

## I. BACKGROUND

Plaintiff, Rajko Dugandzic, sues Defendant, Nike, Inc. ("**Nike**"), seeking damages under Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e ("**Title VII**"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 706.01 ("**FCRA**"). Plaintiff alleges he was subjected to a hostile work environment arising out of harassing conduct by his supervisor Amber Mayne. (Doc. 2). Plaintiff further alleges that Nike retaliated against him for reporting Mayne's conduct and claims Nike discriminated against him based on his national origin when it terminated his employment. (*Id.*).

Plaintiff began working for Nike in 2004 as a part-time Athlete. (Doc. 25-2, pp. 50–52). In that role, Plaintiff was responsible for identifying mismatched shoes and placing them in the correct box with a newly-printed label. (*Id.* at pp. 50–51). Plaintiff worked in this role from 2004 until 2015. (*Id.* at p. 102).

In September 2014, Plaintiff sought a transfer from Nike's Vineland Factory Store to its International Factory Store. (Doc. 24, ¶ 9). Tom Sweeney, Senior Head Coach of the International Factory Store, reviewed Plaintiff's transfer request. (Doc. 25-4, ¶ 6). In reviewing Plaintiff's Performance Activity Record ("**PAR**"), Sweeney noted that Plaintiff received "coaching" related to a violation of the Company's Matter of Respect Policy. (*Id.* ¶ 7). Plaintiff's file also included a performance review from 2014, which stated that he "doesn't accept feedback well" and that he "often says he has been here for nine years and discounts the assessments of those who have not been with Nike for that length of time." (Doc. 25-2, p. 84; Doc. 25-3, p. 6). Ultimately, Sweeney approved Plaintiff's transfer

to the International Factory Store, where he worked from October 2014 until his termination. (Doc. 25-2, p. 69).

Between November 2014 and January 2015, Amber Mayne transferred to the International Factory Store into a Specialist position. (Doc 24, ¶ 11; Doc 25-5, p. 18). In this role, Mayne processed inventory, replenished sizes, and returned excess back product. (Doc 25-5, pp. 20–21). Mayne also occasionally worked as a "Team Captain," which required her to monitor customer needs, monitor theft, and ensure that Athletes were in their assigned areas. (*Id.*).

Plaintiff alleges that beginning in or around December 2014, he made several complaints to Nike's employee hotline. (Doc. 25-2, pp. 88–89). Plaintiff complained about a "lead person" who would "mimic, mock [his] voice, [his] accent, [and] provoke [him]." (*Id.* at pp. 93–94). Specifically, Plaintiff alleged that this lead person, whom he later identified as Mayne, "was mimicking his tone of voice and his accent . . . [and] his own throaty voice," as well as mocking the "linguistics of [his] 'foreign' Croatian accent." (*Id.* at p. 95; Doc. 2, ¶ 27). Mayne "mocked his foreign accent" in the breakroom between "ten [and] fifteen times," and made fun of his "Croatian mannerisms." (Doc. 25-2, p. 125; Doc. 24, ¶ 11).[1] She would also "follow [him] to the restroom . . . to the lunchroom, to breakroom, and on the floor." (Doc. 25-2, p. 94).

---

[1] Plaintiff's Affidavit (Doc. 24), filed July 2, 1018, and Jorge Flores' Affidavit (Doc. 27), filed July 16, 2018, allege that Mayne mocked Plaintiff "on a daily basis" and "over the employee intercom system." (Docs. 24, 27). However, in Plaintiff's Deposition, dated June 1, 2018, Plaintiff states that Mayne mocked his voice between only "ten and fifteen times." (Doc. 25-2, pp. 125–26). He further states that she would only do so in the breakroom where others could not hear her "because she was afraid of being overheard." (*Id.*). He makes no mention of her doing so over the intercom or that she mocked him daily. Due to the conflicting deposition testimony, the Court disregards the allegations contained in the two affidavits regarding daily mocking and mocking

On March 14, 2015, Plaintiff met with Sweeney and Eric Lugo, Head Coach of the International Factory Store, to complain about Mayne. (Doc. 25-4, ¶ 11). Plaintiff stated that Mayne followed him to the bathroom and laughed in his face during his lunch break that day. (*Id.*). Lugo and Sweeney then reviewed the video footage taken in the breakroom from the time identified by Plaintiff in order to corroborate Plaintiff's allegations. (*Id.*). They observed Plaintiff walk to the bathroom, and at this time, Mayne entered the breakroom door on the opposite side of the room. (*Id.*). However, they observed that Mayne did not go toward the bathroom door that Plaintiff entered. (*Id.*) Instead, she went straight to the manager's office after leaving the breakroom. (*Id.*). Plaintiff requested to view the videotape footage, which Lugo and Sweeney denied. (Doc. 24, ¶ 15).

On March 17, 2015, Plaintiff spoke on the phone with an Employee Relations representative. (Doc. 25-2, p. 167). Plaintiff complained to the representative about Mayne following him to the bathroom and failing to greet him at work. (Doc. 25-6, ¶ 13). Plaintiff further stated that he thought Mayne might have something against him because "she was new and was trying to assert her authority over him." (*Id.*).

On March 18, 2015, Sweeney and Lugo met with Mayne to question her about Plaintiff's allegations. (Doc. 25-4, ¶ 13). Mayne denied following Plaintiff around the store or making fun of him. (*Id.*). When asked about greeting him at work, Mayne stated that "she sometimes spoke to [Plaintiff] when she saw him, but not every time, and that she usually greeted him, but not every time she saw him." (*Id.*). After meeting with Mayne, Sweeney and Lugo met with Plaintiff to further investigate his allegations. (*Id.* ¶ 15).

---

over the intercoms. See *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 896 ("[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation.").

4

Plaintiff insisted that Mayne was "copying [his] voice [and] following [him] to the bathroom." (Doc. 25-2, p. 158). Soon thereafter, Sweeney agreed to transfer Plaintiff away from Mayne to minimize contact between them. (*Id.* at p. 160).

On June 9, 2015, Plaintiff again contacted the employee hotline to complain about Mayne's treatment toward him. (*Id.* at 171). He stated that Mayne was regularly checking on his whereabouts over the store radio. (Conrad 14). He further alleged that while in the breakroom, Mayne blew air into his face and said "Boo." (Doc. 25-6, ¶ 14). Plaintiff claimed that "seven or eight people" were in the breakroom and the incident was recorded by the store's video camera. (Doc. 25-2, p. 171).

Defendant alleges that on June 11, 2015, Sweeney and Lugo met with Plaintiff to discuss the new allegations against Mayne. (Doc. 25-4, ¶ 16). Sweeney claims that during the meeting, Plaintiff stated that Mayne "hates [him] because he's a male and she's a lesbian," and called Mayne a "racist white girl." (*Id.*). Plaintiff alleges that Sweeney asked him why Mayne was discriminating against him, and he answered with "I don't know why. Maybe she's a lesbian. Maybe she's a racist. I don't know why she is treating me this way." (Doc. 24, ¶ 20). It should be noted that Plaintiff claims this particular interaction happened on March 18, 2015, rather than on June 11, 2015. (*Id.* ¶ 18). Following this meeting, Sweeney and Lugo reviewed the video footage from the breakroom at the specific time Plaintiff claimed Mayne blew air into this face. (Doc. 25-4, ¶ 19). Sweeney alleged that the video "showed that Ms. Mayne and [Plaintiff] never even came close to each other in the breakroom." (*Id.*). Sweeney maintains that he asked Plaintiff whether anyone witnessed the incident, and "[Plaintiff] did not give [him] any specific names." (*Id.* ¶ 18).

5

On or around June 11, 2015, Sweeney and Lugo met with Mayne to discuss Plaintiff's newest allegations. (*Id.* ¶ 18). Mayne told Sweeney and Lugo that she asked for Plaintiff over the store radio on or around June 9, 2015, "because this was part of her job responsibilities, and that she did not see [Plaintiff] in his zone." (*Id.* ¶ 20). She further denied treating Plaintiff differently than any other employees. (*Id.*).

On June 13, 2015, Sweeney notified Plaintiff that he was suspended. (Doc. 24, ¶ 23). Sweeney made this decision based upon Plaintiff's statements regarding Mayne's race and sexual preference, as well as Sweeney's determination that Plaintiff made false accusations against Mayne. (Doc. 25-4, ¶¶ 22–23). Sweeney recommended terminating Plaintiff's employment. (*Id.*).

Tanya Conrad, Senior Employee Relations Specialist, and Randi Jackson, Employee Relations Manager, reviewed Plaintiff's conduct to determine whether to approve Sweeney's recommendation. (Doc. 25-6, ¶ 17). They considered Plaintiff's prior performance, including his 2014 Performance Review and his 2014 "coaching" violation. (*Id.* ¶ 18). They also reviewed Plaintiffs "history of complaints against Ms. Mayne, the witness interviews conducted, and considered Mr. Sweeney and Eric Lugo's assessment of the video footage that captures the dates and times alleged by [Plaintiff]." (*Id.* ¶ 19). Conrad and Jackson concluded that Plaintiff's allegations were false and that his statements about Mayne violated company policies. (*Id.*). Ultimately, Conrad and Jackson approved Sweeney's termination recommendation. (*Id.* ¶ 22). On or around July 1, 2015, Lugo terminated Plaintiff's employment. (*Id.* ¶ 23). On July 1, 2015, Plaintiff also received a letter informing him of his termination. (Doc. 25-2, p. 102).

On June 19, 2015, Plaintiff filled out an Intake Questionnaire with the Equal Employment Opportunity Commission ("**EEOC**"), describing the alleged conduct by Mayne and alleging that Nike discriminated against him on the basis of race, sex, age, national origin, and color, and subjected him to retaliation. (*Id.* at 112; Doc. 25-3, p. 15). On July 8, 2015, Plaintiff filed a Charge of Discrimination with the EEOC and Florida Commission on Human Relations. (Doc. 25-2, p. 114; Doc. 25-3, p. 20). In his charge, Plaintiff alleged that Nike discriminated against him on the basis of his national origin and subjected him to retaliation. (*Id.*). On December 21, 2016, the EEOC issued a Notice of Right to Sue to Plaintiff. (Doc. 25-2; Doc. 25-3, p. 22).

## II.  STANDARD OF REVIEW

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam)

7

(holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[2]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Hostile Work Environment (Counts I and II)

In Count I and II of his Complaint, Plaintiff alleges that Nike engaged in unlawful employment practices and discriminated against Plaintiff by "creating a hostile work environment based upon Plaintiff's European-Croatian national origin." (Doc. 2, ¶ 2). Plaintiff seeks relief under Title VII (Count I) and under the FCRA (Count II). Claims under the FCRA are analyzed using the same framework as Title VII claims. *Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007). This Court will therefore consider both claims together.

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin." 24 U.S.C. 2000e-2(a)(1). A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a hostile work environment claim, Plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kentworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Defendant contends that Plaintiff failed to present evidence that the harassing conduct of Mayne was sufficiently severe or pervasive to create an actionable hostile work environment. (Doc. 25, p. 13). The requirement that harassment be sufficiently severe or pervasive contains both an objective and a subjective component. *Miller*, 277 F.3d at 1276. The harassing conduct must result in both (1) an environment "that a reasonable person would find hostile or abusive, and (2) an environment that the victim subjectively perceive[s] . . . to be abusive." *Id.* (quoting *Harris*, 510 U.S. at 21–22).

The objective element is "not subject to mathematical precision," but rather courts can infer an environment is "hostile" or "abusive" from the circumstantial facts. *Edmond v. Univ. of Miami*, 441 F. App'x 721, 725 (11th Cir. 2011). This requires consideration of

9

"(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009) (quoting *Harris*, 510 U.S. at 21–22).

To make out an actionable hostile work environment claim, Plaintiff must show harassing conduct based on his national origin. *Whitehurst v. Liquid Envtl. Sols., Inc.*, 45 F. Supp. 3d 1328, 1343 (M.D. Fla. 2014) ("The touchstone of a hostile work environment claim is the presence of severe or pervasive harassment based on a protected characteristic.") (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000)). "[N]ot all objectionable conduct or language amounts to discrimination under Title VII, . . . only conduct that is based on a protected category . . . may be considered in a hostile work environment analysis." *Trask v. Sec'y, Dep't of Veteran Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (holding that "voluminous incidents of pharmacy management's alleged hostility [and] comments . . . were never related to the plaintiffs' protected characteristics"). Plaintiff alleges several instances where Mayne harassed him, however, only the instances where Mayne mocked his accent and manner of speech can be considered conduct based on his national origin. The allegations that Mayne followed him places, asked for him over the intercom, blew in his face, failed to greet him, or yelled "Boo" bear no relation to Plaintiff's national origin. *See Salazar v. Delta Health Grp, Inc.*, No. 10-20783-CIV, 2010 WL 5313497, at *10 (S.D. Fla. 20, 2010) (finding that "calling Plaintiff a liar" and "that she received too much work" could not be considered for a hostile work environment claim because Plaintiff did not offer any evidence that this alleged

conduct was based on her national origin). Therefore, these instances are not considered for the purposes of Plaintiff's hostile work environment claim.

The Court now considers whether Mayne's allegedly discriminatory conduct based on Plaintiff's national origin was sufficiently severe or pervasive to create an actionable hostile work environment. Regarding the frequency of the discriminatory conduct, the Eleventh Circuit does not look for "mathematical precision" to satisfy the factor. *Edmond*, 441 F. App'x at 725. However, it does require more than just "several occasions" of discriminatory verbal conduct to support a finding that the conduct was frequent enough to constitute a hostile work environment. *See Njie v. Regions Bank*, 198 F. App'x. 878, 880 (11th Cir. 2006) (finding that several occasions of racial slurs and use of the word "token" and "quota" were not frequent or severe enough to constitute a hostile work environment). Here, Plaintiff alleges that Mayne mocked his accent and copied his "throaty voice" and "Croatian linguistics" between ten and fifteen times during their employment relationship. (Doc. 25-2, pp. 93–95). These ten to fifteen instances occurred over the course of many months and were not daily occurrences. (*Id.*). This limited frequency weighs against Plaintiff. *See Jackson v. Fulton Cty.*, 1:12-CV-0518-ODE-ECS, 2015 U.S. Dist. LEXIS 183818, at *49 (N.D. Ga. Jan. 26, 2015) (holding that the mocking of plaintiff's accent, clothing, and nationality "hundreds of times" did not rise to the level of severity required to establish a hostile work environment).

The Court finds that the severity factor weighs significantly against Plaintiff. Harassing conduct must be "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Bryant v. Jones*, 575 F.3d 1281, 1297. In *Edmond v. Univ. of Miami*, the court held that

instances of an employee "telling [plaintiff] that he has a Haitian accent; . . . yelling at him in the presence of patients, family members and co-workers; assigning [him] patients who have animosity against Haitians, and calling [a coworker] to interpret for [him] in the presence of others" was insufficient to show plaintiff suffered from severe hostile conduct. *Edmond*, 441 F. App'x at 725. Here, Plaintiff alleges that Mayne mocked his accent on several occasions by "mimicking his tone of voice and his accent . . . [and] his own throaty voice," as well as mocking the "linguistics of [his] 'foreign' Croatian accent." (Doc. 25-2, p. 95; Doc. 2, ¶ 27). This is not enough to support a hostile work environment harassment claim because Mayne's conduct was not severe or pervasive enough to "alter the terms and conditions of employment and create a discriminatorily abusive environment." *Bryant v. Jones*, 575 F.3d 1281, 1297; (Doc. 25-2, p. 95; Doc. 2, ¶ 27). Mayne did not use racial slurs and did not engage in offensive physical conduct. *See Salazar*, 2010 WL 5313497, at *10 (finding the "severity factor weighs against Plaintiff" partly because "[n]o racial slurs were used, and no offensive physical conduct has been alleged"). Like in *Edmond*, Mayne's expression of animosity toward Plaintiff's national origin by mocking his Croatian accent is insufficient to show Plaintiff suffered from severe hostile conduct. *See Edmond*, 441 F. App'x at 725.

Viewing the facts in the light most favorable to Plaintiff, Mayne's mocking of Plaintiff's Croatian accent and mannerisms may have been humiliating to Plaintiff and interfered with his work. *See Bryant v. Jones*, 575 F.3d 1281, 1297 (stating that two factors to consider in addressing the objective severity of harassing behavior are "whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance"). However, even in light of this, Plaintiff has not come

forward with sufficient evidence to support a reasonable finding that Plaintiff suffered from severe or pervasive discriminatory harassment necessary to "alter the terms of employment" or "create an abusive environment." *See id.* Therefore, the Court finds Nike to be entitled to summary judgment on the claim of hostile work environment.

### B. Retaliation (Counts III and IV)

In Count III and IV of the Complaint, Plaintiff alleges that Nike retaliated against him because of his complaints of national origin discrimination to Nike and to the EEOC. (Doc. 2, pp. 11–12). Plaintiff seeks relief under Title VII (Count III) and under the FCRA (Count IV) for unlawful retaliation. As stated above, claims under the FCRA are analyzed using the same framework as Title VII claims, and therefore, this Court will consider both claims together. *Albra*, 490 F.3d at 834.

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate three elements: (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) the adverse employment action was causally related to his protected activity. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). If Plaintiff establishes a *prima facie* case, the Court then utilizes the *McDonnell Douglas* burden shifting framework. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Under this framework, once the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory explanation for its challenged decision. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A legitimate, nondiscriminatory explanation rebuts the presumption of discrimination raised by the *prima facie* case, and the burden of production shifts back to the plaintiff to prove that employer's reasons were a pretext for

intentional discrimination or retaliation. *St Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 255).

Assuming Plaintiff can establish a *prima facie* case of retaliation, Plaintiff's retaliation claim fails because Plaintiff did not carry its burden of producing evidence to permit a reasonable finding of pretext. *See Brungart*, 231 F.3d at 798. According to the Eleventh Circuit, a good faith finding of false accusations constitutes a legitimate, nondiscriminatory reason for a termination decision. *See Wilcox v. Corr. Corp. of Am.*, 603 F. App'x 862, 867 (11th Cir. 2015) (holding that a determination that employee's allegations against coworkers were "false and exaggerated" constituted a legitimate, nondiscriminatory reason for her discharge). In *EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000), the Eleventh Circuit held that when an employer investigates contradictory accounts, the employer can "lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least as long as the choice is an honest choice." *Id.* The employer is then entitled to discharge the employee for making false accusations. *Id.; see also Tiggs-Vaughn v. Tuscaloosa Hous. Auth.*, 385 F. App'x 919, 923 (11th Cir. 2010).

Nike alleges that it terminated Plaintiff due to his comments regarding Mayne's race and sexual orientation, as well as his false accusations against Mayne. (Doc. 25-4, ¶¶ 22–23). Nike investigated Plaintiff's complaints by regularly interviewing both Plaintiff and Mayne regarding the allegations and then reviewing video footage in an attempt to corroborate Plaintiff's claims. (*Id.* ¶¶ 11, 18–19). However, Sweeney, Lugo, Conrad, and Jackson all concluded, after investigation, that Plaintiff accusations against Mayne were false. (*Id.* ¶¶ 22–23; Doc. 25-6, ¶ 22). In light of this, as well as Plaintiff's comments

regarding Mayne's race and sexual orientation, Nike terminated Plaintiff. Therefore, Nike provided a legitimate, nondiscriminatory reason for Plaintiff's discharge based upon its good faith finding that Plaintiff was making false accusations against Mayne. *See Wilcox*, 603 F. App'x at 867.

Plaintiff has not produced evidence to permit a reasonable finding that Nike's reason for Plaintiff's discharge is pretextual, and therefore, Plaintiff cannot satisfy the *McDonnell Douglas* burden shifting framework necessary to survive summary judgment. *See Brungart*, 231 F.3d at 798.[3] To permit a finding of pretext, Plaintiff must provide evidence which shows that Nike's "proffered reason was false and that the true motive for the action was discriminatory." *St Mary's Honor Ctr.*, 509 U.S. at 515. The Court will not act "as a super-personnel department that reexamines an entity's business decisions . . . rather, we limit our inquiry to 'whether the employer gave an honest explanation of its behavior.'" *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Plaintiff fails to explain why Nike's proffered reason for termination was false and the true reason was discriminatory. *See St Mary's Honor Ctr.*, 509 U.S. at 515. At most, Plaintiff claims that Nike "did nothing" in response to his complaints during his employment. (Doc. 25-2, p. 176). Assuming the investigation was flawed, Plaintiff still fails to establish that the decisionmakers—Sweeney and Lugo—harbored any ill intent toward Plaintiff to support an allegation that their investigation into his accusations and their subsequent termination

---

[3] "The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 921 (11th Cir.1993).

recommendation was false and discriminatory. *Chukes v. Sailormen Inc.*, 648 F. App'x 779, 782 (11th Cir. 2016) (affirming grant of summary judgment for employer despite assuming the investigation leading to termination was "flawed").

Plaintiff has failed to satisfy his burden of producing evidence to permit a reasonable finding that Nike's legitimate, nondiscriminatory reason for his termination was pretextual. Therefore, Defendant's motion for summary judgment on the claim of retaliation is due to be granted, and Plaintiff's motion for summary judgment is denied.[4]

### C. National Origin Discrimination[5]

Plaintiff claims that Nikes unlawfully discriminated against him based on his national origin when it terminated his employment. (Doc. 2, ¶ 46). Once again, the *McDonnell Douglas* burden shifting framework applies, so the plaintiff bears the initial burden of showing a *prima facie* case of discrimination. *Banks v. Tanner Medical Ctr.*, 662 F. App'x 746, 749 (11th Cir. 2016). In order to establish a *prima facie* case of national

---

[4] Plaintiff's brief lacked a single record citation. (Doc. 23); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam). It is the responsibility of the litigants, not the Court, to cite the record in support of their arguments for and against summary judgment. *See, e.g.*, *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990).

[5] It is unclear whether the Complaint alleges a national origin discrimination claim in connection with termination. (Doc. 2). Plaintiff states in his Complaint that "Defendant, as Plaintiff's employer, engaged [in] unlawful employment practices and discrimination in violation of Title VII and the FCRA by creating a hostile work environment based upon Plaintiff's European-Croatian national origin and engaging in retaliatory acts against Plaintiff for his participation in protected activity." (*Id.* ¶ 2). The Court interprets this to mean Plaintiff alleged claims for hostile work environment and retaliatory discharge in violation of Title VII and the FCRA. Defendant's Motion for Summary Judgment additionally moved for summary judgment with respect to Plaintiff's "national origin discrimination claims . . . in connection with his termination." (Doc. 25, p. 23). Thus, to the extent Plaintiff alleges this claim, the Court grants Defendant's motion for summary judgment.

origin discrimination in connection with termination, a plaintiff must show: (1) he "is a member of a protected racial class"; (2) he "was qualified for the position"; (3) he "experienced an adverse employment action"; and (4) he "was replaced by someone outside of [his] protected class or received less favorable treatment than a similarly situated person outside [his] class." *Id.* (quoting *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015)). Once the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate, nondiscriminatory reason for the employer's decision, which the plaintiff can then rebut as pretextual. *Id.*

As discussed above, Nike met its burden to establish a legitimate, nondiscriminatory reason for its termination decision, which Plaintiff failed to rebut as pretextual. Plaintiff did not indicate a single action by an individual involved in the termination decision that would suggest discriminatory animus. Plaintiff only alleges discriminatory actions on the part of Mayne, who was not involved in the termination decision with Lugo, Sweeney, Conrad, or Jackson. (Doc. 25-6, ¶ 17). Further, Sweeney, the individual who made the termination recommendation, approved Plaintiff's transfer to the International Factory store just nine months prior. (Doc. 25-2, p. 69). "[W]here the same person made the decision to hire and to discharge a Plaintiff, and the decisions were close in time, there is an inference against a discriminatory motive." *Smith v. Integrated Cmty. Oncology Network, LLC*, No. 3:08-cv-1196, 2010 WL 3895571, at *4 (M.D. Fla. June 18, 2010). Therefore, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's national origin discrimination claims.

**IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 25) is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 23) is **DENIED**.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, and thereafter, to close the case.

**DONE AND ORDERED** in Orlando, Florida on October 10, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties